Good morning, Your Honors. Adam Hansen on behalf of Petitioner Randall Holl, I'll endeavor to reserve two minutes of time for rebuttal. And may it please the Court, the District Court committed clear error when it failed to apply bedrock principles of contract formation in compelling Petitioner to arbitration. I'm going to proceed as follows today, beginning with the issue of contract formation and how the District Court deviated from the applicable standards, then moving to address the arguments that Respondent raises under the Federal Arbitration Act. And then I will address, if the Court has any questions, the remaining mandamus factors. THE COURT Those factors, by the way, at least for me, are very important. The contract issues, I think you argued those well in your brief. The other side has given its perspective. But mandamus is tough. It's really tough. MR. HANSEN It is. THE COURT And you have to show that all the Bauman factors are met. So let's, it saves us a little bit of time for that, okay?  THE COURT Go with your contract. MR. HANSEN Let me just try to respond briefly up front and we'll come back to it. Certainly with respect to the Bauman factors, this Court has two decisions, one very recent, one about 10 years old, that arose specifically in this context of the motion to compel arbitration. That's the Johnson and the Henson case. So those cases do shine the light on the path that we have to walk on, Your Honor, to accomplish that. And I would note that, at least in the case of Johnson, it explicitly said only the first three Bauman factors were satisfied. So that is enough to get us over the hump. But let me return to that at the end, time allowing. With respect to the third factor, clear error, of course, the most important factor in the mandamus analysis, the District Court, as I mentioned a moment ago, did commit clear error here. The question of contract formation, of course, turns on the mutual manifestation of assent. That conjures up the platonic ideal of two people sitting on opposite sides of the bargaining table. In the real world of 2019, we have created the legal fiction of inquiry notice. And this is an important legal concept that, of course, is going to govern when we have contracts that are delivered mechanically on a take-or-leave basis, in other words, contracts of adhesion. In other words, all contracts relating to software, for example. Well, I assume, you know, if I'm a software vendor in a large company, there may be some consumer context. If you're on the Internet, we're in the contract of adhesion. So are you suggesting that all, or substantially all, contracts that people click on without reading for software are, you couldn't possibly have something in there requiring people to arbitrate their differences and have it enforceable? Absolutely not, Your Honor. The standards that govern contracts of adhesion easily allow arbitration to be enforced. Simply, all a company would have to do with respect to arbitration or any other material term would be to comply with really the minimum guideposts that California courts have established to make terms in a contract of adhesion operable. And what courts have said is, well, when we don't have this platonic ideal of two people on opposite sides of the table, what would a reasonable person have understood themselves to be agreeing to in that situation? And courts have established the guideposts of conspicuousness, requiring that these material terms be plain and clear, and requiring that they be brought to the attention of the contracting party in order to... It has to be obvious. It has to be reasonably obvious, right? Conspicuous, yes. And it can't be so deeply hidden that it takes a degree in software coding to be able to find it, correct? Yes. And indeed, as I understand it now, UPS on this particular program puts it right up front. That doesn't resolve this litigation, but that's an example of how you can make it more plain. Now, with this program, this My Choice program, first of all, your client did not have to enroll in that, correct? Correct. He could have been a user of UPS, a customer of UPS, even an admirer of UPS, and not have agreed to the UPS program, to this My Choice program. Correct. So he did that on his own. That was voluntary. Correct. And he checks the box which says, by selecting this checkbox and the continue button, I agree to the UPS technology agreement and the UPS My Choice service terms, correct? Correct. And there was a hyperlink attached to that, correct? Two hyperlinks, correct. Yeah, which got you to the service terms and conditions, one of which was claims and legal actions, individual binding arbitration of claims, correct? Incorrect. Tell me why it's wrong. Well, factually, this is what the case hinges on in large part. There are two hyperlinks that are displayed on the website. If you go to the first hyperlink, you get a 98-page document that mentions nothing applicable to this plaintiff about arbitration. In fact, on page 8, it says all claims shall be filed in state or federal court. It also incorporates six, I think, other documents by reference. So in theory, while still on that first link, you could go off and read all of these other documents. Now let's talk about the second link. The second link takes you to a very relatively short document, a three-page document, which is the My Choice service terms. This document mentions nothing about arbitration or court or dispute resolution at all. But it does purport to incorporate by reference yet three additional documents. So now we're up to 7, 8, and 9 total. And one of those documents, the second on the 27th page, claims to require arbitration. So hopefully I'm giving a flavor through this description of what we're dealing with here. Is that on the UPS website, that last one? The last one is on the UPS website. But that also is a good point, because in that second three-page document, it makes reference to these three additional documents, and it says you can go to ups.com to find them. But if you were to go to ups.com and do a control find for those three documents, you wouldn't find them on the main UPS page. You would actually have to root around and search on ups.com. All right. So I want to make sure that I'm understanding your response to Judge Hawkins' question. So your position is you could not get to these terms through hyperlinks. Correct. Okay. Yeah. That's undisputed. All right. So it's not impossible, but what we have here is the standard of conspicuousness, which it gives integrity to this legal fiction that we're all living with. It gives integrity to this concept that if a person were to give his or her level best and actually sit down and read these things, that they would have the same understanding as the material terms as the offering party. Does it matter that, I'm going to guess, 99 percent of the consuming public hasn't got the faintest idea what any of it says, let alone the arbitration clause? I don't think it matters. In fact, I think it matters in the other direction, because what we're really talking about here is, look, we're not going to bail out people who don't read these things. The expectation is you need to go read it. But if you're in the 99 percent who doesn't read it, we're only going to impugn- I'm saying that 99 percent, even if they read it, they don't understand it. They're not lawyers. This is great to them. They have no clue whatsoever what any of it means. Does that matter? It does matter. I mean, the second prong of what the California courts have identified as the reasonable communicative test is this plain and clear requirement. And the courts have said this goes beyond the traditional contractual requirements of lack of ambiguity. It must be understandable. It's not impossible. In fact, it's easy for these terms to be written in a way that a person of ordinary ability and intelligence can understand. And the fact that we've gotten so accustomed to contracts, this one, I think, being one of the worst offending examples of just this being an impossible morass speaks to the problem. You're not saying, as I understand it, that entities like UPS cannot require that an individual who takes advantage of a service like MyChoice can be compelled to arbitrate individual claims? Absolutely. Absolutely not. What I take it you are saying is that they can make the process of discovering that so attenuated that, in fact, it's not reasonable and it's not conspicuous. Correct. And this, I mean, we're talking about Internet contracting here, but this body of law, as this Court has recognized in the U.N., it has not fundamentally changed with the of the steamship tickets that deal with insurance contracts you could buy at the airport through a vending machine. These are the early cases that deal with contracts of adhesion. And courts have established these guideposts, as I have said, simply to promote the integrity of this legal fiction, that if someone gave it their level best that they would have essentially gotten there, they would have gotten to that meeting of the minds. Well, if it had been hyperlinked, to follow up for my last question, would you still be arguing the same position, that we should mandamus the trial court because of that? It would be better, but I wouldn't. And here's why, and this is a good segue to the next point. As I mentioned to the response to Judge Hawkins' question, the first hyperlinked document contained a dispute resolution provision that says all claims arising out of or related to, which is the broadest possible language this Court has recognized this agreement, shall be decided in State or Federal court. And we've cited a number of cases, the Tenth Circuit's opinion in Raghab, for one, and the Hawaii Supreme Court's decision in Narayan, that talk about if you have competing dispute resolution provisions within the same morass of contractual documents, that there is no meeting of the minds on that material term. And so, Judge Lynn, that point, at least under the facts of this particular case, would be an independent impediment to, you know, the district court's holding. But if I take your point more generally, which is, if you just have a website and a hyperlink, and then behind that hyperlink you've got clear, conspicuous terms, then, yes, I would agree that that gets the job done. So I'm not here asking the Court to overturn, you know, what is really the principal business practice of most software vendors. This is an outstanding and extraordinary offending example when it comes to inconspicuousness and lack of clarity. So, from your perspective, what you want us to take away from this is, even if they were able to tie in arbitration through a normal hyperlink, in this case, even a lawyer looking at this would say, okay, on the one hand, in the contract, I've got a more traditional conflict resolution, which involves courts and a choice of law. On the other hand, I've got arbitration. Those are mutually exclusive. There was no meeting of the minds. Therefore, at least in this case, they are not entitled to compel arbitration. Is that right? Yes, that's right. And we really have the weight of authority behind us on that position. Let me address briefly, if I could, the federal arbitration argument points, because I think those are important. What the Supreme Court has told us, principally in the Concepcion decision, is that state courts and state law generally can't create contract principles, be they formation or contract offenses, that discriminate against arbitration or essentially effectuate that discrimination covertly. Justice Kagan turned a nice phrase in Kindred when she said a state can't, for example, have a rule that applies to arbitration and black swans. In this case, these rules don't apply to arbitration or single out arbitration in any unique way. Of course, lots of contracts that involve arbitration have nothing to do with agreements that are adhesive in nature. I can go negotiate freely an arbitration agreement and none of these rules would apply. By the same token, courts have applied these rules to many other clauses in agreements, limitations on liability, contractual statutes of limitation, venue clauses, many others cited in our brief. And so what you have here is a rule of general applicability. And the Supreme Court in Concepcion specifically said that those are still okay. This rule, these rules that go really to the fundamental heart of contract formation do not draw their essence from arbitration or discriminate against arbitration in any meaningful way. Do you want to save some of your time? I would like to. Thanks so much. Thank you. Good morning, Your Honors. May it please the Court? Dion Maynard for UPS. The drastic and extraordinary remedy of mandamus is not warranted here. The district court correctly applied well-settled legal principles and compelling arbitration, and it certainly didn't clearly err. And none of the other factors justify mandamus either. Well, let's talk about the point that we've just been discussing with your opponent. He seems to concede that the normal kinds of things that bother people in these matters don't apply here. He understands you can have a hyphen, a hyperlink, and have arbitration. People may not understand it. But in this case, you've got a contract that has two mutually exclusive conflicting clauses. Why isn't he right that as a matter of basic contract law, there's a failure to have a meeting of the minds, and therefore, at least in this limited case, you don't have a right to compel arbitration? Because the district court correctly concluded here that there's no conflict, Your Honor. So there's no conflict between a clause that says that any, as you point out, the very broadest kind of conflict resolution will be to settle in state or federal court and venue provisions versus arbitration. How can they be anything other than in conflict? Because the first one is contained in the technology agreement. And as the technology agreement makes clear on its face, that it relates to use of UPS's technology. The arbitration clause, by contrast, is contained in the UPS terms and conditions, which makes clear on its first page that it governs UPS's shipping, including the UPS ground service that the plaintiff used here to ship his package that is the basis for his complaint. And the arbitration clause encompasses all disputes related to UPS's provision of its shipping services. And that's what the complaint is about here. And that is clear in the contracts that the language, the general state, federal language that only applies to technology agreement, that agreement itself makes it clear. There's no all-encompassing agreement that wraps them all together. They are distinct documents. And clearly so from your perspective? Yes. Yes, Your Honor. So the UPS technology agreement is an agreement. It says it's included in RPI EX-14. It says it's with a different entity, UPS Market Driver, Inc. On RPI EX-15, it provides a license to use UPS's proprietary technology. And then the forum clause on which they rely is qualified. It arising out of or related to this agreement, the agreement about using technology services. And the district court, again, it certainly didn't clearly err, and I don't believe it's wrong at all in concluding the technology agreement's kind of a red herring here. It doesn't apply to the shipping claims. And to get to the contract that was formed, so to the extent inquiry notice governs at all in this situation, the question is, did you enter into a contract with UPS? Petitioner does not dispute that he entered into a contract with UPS. He agrees, as Your Honor was pointing out, that he selected, I agree, I accept the my choice service terms. He didn't have to do that. He entered into a contract. It was clear he was entering into a contract. That satisfies any requirement for inquiry notice, as the district court correctly concluded. When you go to the ---- Sotomayor, does the inquiry have to be reasonable? To the extent it has to be, you have to be on, to the extent there's any reasonable notice requirement, it has to be that you're on reasonable notice. You're entering into a contract with binding terms. And that, as Your Honor pointed, he clicked by selecting this check box and the continue button, I agree to the UPS my choice service terms. And that's at RPIEX165. When you click ---- And the UPS my, yeah, my choice service terms, right? That's right. Exactly. Yes. Thank you. So if he says, if the person doing this says, I wonder what I'm agreeing to here. That's right. What steps after that does that person have to take to boil down to arbitration? If he clicks on the UPS my choice service link, that is the link, that hyperlink was in what he had, he doesn't disagree. Click on that. As the district court recognized, the very first paragraph of that document contains an express identification. It says that it incorporated, expressly incorporated here by this reference are the UPS tariff terms and conditions, which are available at UPS.com. That, under California law, and this is the, under California incorporation by reference law, that is plenty sufficient to identify the document and tell the plaintiff where to get it, that is sufficient to bind the plaintiff. Under the case we cite, Wulschlager, it's cited and discussed in our response, that case involved title insurance. The preliminary title insurance document did not contain the arbitration clause, but it said by it expressly incorporated the policy which was available at the office that issued this policy, available at the office that issued this policy. In that policy was the arbitration clause. The California court held that even if the plaintiff was not subjectively aware of what the policy said or that it contained an arbitration clause, that he was bound. That was sufficient to bind. Similarly here, regardless of whether he read the UPS choice of service terms, which he clearly agreed, because he clicked and he said the first paragraph of the link that you get to when you do hyperlink says, as the district court recognized, you know, the UPS tariff terms and conditions of service are expressly incorporated herein. You expressly acknowledge having reviewed, understood, and agreed to the UPS tariff terms and conditions of service and the UPS rate and service guide and accept their application. That's at RPIEX 170. That is in the first paragraph of the docket to which you link when you click on the hyperlink that was made available to him, when he signed up saying, I agree. You still have to go to UPS.com? You do. But the record shows that is readily available to him, certainly even more available than going to the office that issued this policy in Welschlager, for example. So you go to UPS.com and the record reveals that it is readily available to the UPS website, through the search link, the customer service link, and notably also, the arbitration clause is attached to petitioner's complaint in two places. He attaches the tariff terms and conditions as Exhibit A. That includes his complaint, includes the arbitration clause in that document. He attaches the UPS rate and service guide at Exhibit C, which is the foundation of all of his claims here. That includes the terms and tariffs at the back of Exhibit C of the complaint, which includes the very arbitration clause that UPS has invoked here. And that clause is broad. It encompasses all shipping claims you have with UPS. He accepted under California law, he accepted and joined and agreed to those terms, and he is bound by them. And the district court was correct in concluding that. And it certainly didn't clearly err to warrant mandamus relief. So it's okay to make it difficult to find the arbitration clause? With respect, Your Honor, it isn't difficult to find it. You click the link to the, it's in the first paragraph, and then all you have to do is go to UPS.com. Let me try rephrasing the question. Okay. Is it okay to require four separate steps in the reading of UPS's UPS.com to find out about arbitration? It is, Your Honor. Because the question under California law is, did you agree to the arbitration clause? And the question under California law is then, were the tariffs and terms incorporated? So just like the little woolschlager case, it was expressly incorporated and he is bound by it. The terms and tariffs were expressly identified, and he was told where he could find them. And there he could find. I'm just curious about one thing. Yes. My limited understanding of the business model of UPS. I can't imagine they would ever agree to having individual lawsuits in courts all over the country. They would require arbitration. Why not put it up front? Well, so. Your answer, I take it, is they're not required to. And here are some cases where it was even more difficult to find the arbitration clause. They aren't required to, Your Honor. As one of you noted, it now, they now have put it, made it more readily available. UPS is always looking for ways to make things easier for their customers, and they added it. But the fact that they added suspenders to the belt that was already there doesn't mean the belt wasn't binding. And it was. Under California law, it was. And so, and I would like to turn and say, and the rule he's requesting you to adopt would both be contrary to binding California Supreme Court precedent, which has said there is no requirement in California to highlight an arbitration clause. That's a Supreme Court, California Supreme Court decision in Sanchez, nor to call it particularly to the plaintiff's attention. And if there were such a rule, it would be preempted by the Federal Arbitration Act. That is what the Supreme Court held in 1996 as the Petitioner concedes in his reply brief at page 7 in a case called Doctors Associates, which was where the U.S. Supreme Court was presented with a case of, can you require, can a State require the arbitration clause to be on the first page and highlighted a contract, and the Supreme Court held that was preempted. No. Sotomayor, is there any line that it's just too hard to find it? I mean, if someone, if UPS had a crude map, cross the Golden Gate Bridge, drive 2 miles, climb 100 feet, bring a shovel, presumably that wouldn't do. Well, so I think it would be a question of California law, Your Honor, as to whether or not you had, under the cases like the Walsh-Lyer case, identified the document and told the plaintiff where to find it. And but this is not, clearly not, that hypothetical. As the district court correctly concluded, it was readily available. It's all, it's very easy to get to from UPS.com, and certainly easier than going to the office that issued this policy. The, when he wants to, the rule that he is positing is to somehow treat arbitration clauses as akin to exculpatory clauses under California State law. That's where he's drawing this notion that it needs to be highlighted. And so, you know, he refers a lot to adhesion contracts. And, of course, adhesion contracts, that sounds like a dirty word, but it's not. Those are just simply contracts that are on standard forms where you don't have an obligation to negotiate the contracts. As the U.S. Supreme Court has recognized, it's very common these days to have these kinds of contracts. If a rule were to be adopted that treated arbitration clauses as something bad, that, you know, were unexpected in the same way that an exclusionary policy, an exclusionary clause in an insurance policy is unexpected or bad and, therefore, must be called to attention, that rule would be preempted. I mean, I think Dockers Associates pretty much already does preempt it, but anything that Concepcion makes that clear, anything that calls out arbitration as something bad and special, because it's arbitration, and the only way to apply Petitior's rule would be to look at the clause itself and say, are we talking about an arbitrating clause? And if so, then it fits into the exculpatory clause bad bucket, and, therefore, it must be called out and highlighted in some way special, that would be preempted. And contrary to California law, to start with, because Sanchez, I think, makes clear it isn't that sort of clause. Sanchez says you don't have to highlight arbitration clauses and you don't have to specially call them out. None of the other factors are met here either, Your Honor. You know, this Court's made clear that going to arbitration is not irreparable harm. You can appeal after you do that. The Petitior points to no off-repeated error, certainly not on behalf of this particular district court or district courts generally. We agree with the Petitior that regular contract law principles apply. These are just well-established principles of contract law that the question is how do you apply them on this case. Thank you. Roberts. Thank you very much. So can I just ask you right off the bat? Yes. When you and I talked before, you said there's a failure to have a meeting of the minds. Her answer is you've got two different entities involved, two different contracts. What's your response to that? Yeah. We don't agree with that. There is, on page 1 of the document, the technology agreement, it does mention a different entity. But as you would likely suspect, the dispute resolution clause does not limit itself to that entity, UPS Market Driver. It includes UPS Market Driver's affiliates, including UPS, a.k.a. the defendant in this case. And to your other question, Judge Smith, there is no master principle. There's no clause that says, well, you know, if another agreement applies, then this one stands down. They're just both maximalist coverage provisions that can easily both apply to the same case as is the case here. If you look at the merits of plaintiff's complaint, it's all about UPS's technology and its use of technology to perpetuate this scheme. I'd like to close with two final points, or I guess one final point, since I asked that question. Judge Hawkins, you asked why companies don't put this right up front. And the answer to that question is if you talk to marketing or business people at these companies, they want this process to be as contract-free and simple as possible. The legal people in the company, on the other hand, they want something that is going to stand up in court. And so, unless courts are independently willing to have a dialogue on these points and require companies to be more conspicuous and more plain and clear, this is going to be the rule of the road. Courts will put their imprimatur on so-called agreements like this, and the legal fiction of inquiry notice will become a legal fantasy. I ask the court to grant the writ. Thank you. Thanks to all counsel for their arguments. We appreciate it very much. The case just argued is submitted, and the court stands adjourned for the week.
judges: Hawkins, M. Smith, Jr., Lynn